[Doc. Nos. 3, 14]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHELE RENN CORCHADO, JONATHAN MUSSO, | |
| Plaintiffs, | Civ. No. 15-6600 (JBS/JS) |
| v. | |
| FOULKE MANAGEMENT CORP., et al., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

This Opinion addresses whether plaintiffs are required to arbitrate this dispute in view of their contention that they were fraudulently induced to sign their stand-alone arbitration agreements. The Court holds that it will make this gateway or arbitrability ruling after limited discovery is taken.

This matter is before the Court on two "Motion[s] to Compel Arbitration and Stay Proceedings" [Doc. Nos. 3, 14]. The first motion was filed by defendant Foulke Management Corp. ("Foulke") directed towards plaintiffs Michele Renn Corchado ("Corchado") and Jonathan Musso ("Musso") [Doc. No. 3]. The second motion was filed by defendant Wells Fargo Dealer Services ("Wells Fargo") directed

solely to Musso [Doc. No. 14].[1]  The Court received Corchado and Musso's (collectively "plaintiffs") joint brief in opposition to Foulke and Wells Fargo's (collectively "defendants") motions, [Doc. No. 16], as well as defendants' joint reply [Doc. No. 17].[2] In addition, the Court held oral argument. For the reasons discussed herein, defendants' motions are DENIED WITHOUT PREJUDICE. Because there are fact issues as to whether the parties mutually assented to arbitration, the Court will grant the parties leave to take limited discovery on this issue. Thereafter, defendants may refile their motion requesting to refer plaintiffs' claims to arbitration. The Court also rules that the gateway issue of arbitrability will be decided by the Court rather than an arbitrator.

**BACKGROUND**

---

[1] Hereinafter, the Court will refer to the first motion as "Foulke Motion" and the second motion as "Wells Fargo Motion."

[2] Defendants Foulke and Wells Fargo are represented by the same counsel. Foulke's motion, filed first, sought separate arbitrations for both plaintiffs. Foulke Mot. at 12 [Doc. No. 3-1]. Subsequently, counsel filed the Wells Fargo motion, seeking to compel arbitration as to Musso only. Wells Fargo Mot. [Doc. No. 14-2]. Wells Fargo is a defendant by virtue of count three of the complaint, which avers that Wells Fargo is the "holder in due course" of Musso's retail installment contract. See Compl. at ¶ 140 [Doc. No. 1]. Although the need for limited discovery prevents a determination as to arbitrability at this time, the Court will sever the claims of Corchado and Musso in a separate Order entered concurrently with this ruling. After severance, the cases will be consolidated for purposes of discovery and case management.

This action arises out of two separate incidents in which Corchado and Musso made separate, aborted attempts to purchase used cars from Foulke's car dealerships. Corchado's aborted purchase began January 28, 2015 when she attempted to buy a used Toyota pickup truck from Mt. Ephraim Chrysler Dodge. Compl. at ¶¶ 87, 88 [Doc. No. 1]. Musso's transaction took place at Cherry Hill Mitsubishi, and occurred on and about the weekend of April 25-26, 2015. During that period Musso went to Cherry Hill Mitsubishi on several occasions in an attempt to buy a used Ford Edge using a trade-in vehicle to offset the purchase price. Id. at ¶¶ 8, 9, 27.

During their time at the respective dealerships, Corchado and Musso signed stand-alone arbitration agreements in addition to other contract documents. See Foulke Mot. Ex. C [Doc. No. 3-4]; Wells Fargo Mot. Ex. A [Doc. No. 14-3]. Although plaintiffs do not dispute that their signatures appear on the arbitration agreements at issue, they contend their signatures were obtained by fraud, trickery, and deceit and, therefore, they did not assent to arbitration. More specifically, Corchado contends that a salesman at Mt. Ephraim Chrysler Dodge induced her to sign her arbitration agreement by misrepresenting that the papers she was signing were intended merely to confirm that she had sufficient insurance to take a vehicle home for a weekend-long test drive. Pltfs' Opp. at

3 [Doc. No. 16]; Declaration of Michele Renn Corchado at ¶ 19 [Doc. No. 16-2] ("Corchado Declaration"). In addition, Corchado alleges that employees of Foulke used their hands to physically cover up portions of the documents she signed. Pltfs' Opp. at 4 [Doc. No. 16]; Corchado Dec. at ¶ 36 [Doc. No. 16-2].

Musso also alleges that the arbitration agreement he signed was manually covered up while he signed it, and that he was induced to sign by Foulke's disingenuous practices. Pltfs' Opp. at 6-7; Declaration of Jonathan Musso at ¶¶ 23-25, 31 [Doc. No. 16-4] ("Musso Declaration"). The purported scheme to secure Musso's signature involved an alleged misrepresentation by Foulke's employee. The employee told Musso that Musso must sign certain documents before he could use the dealership's free short-term loaner vehicle. Pltfs' Opp. at 6-7 [Doc. No. 16]; Musso Dec. at ¶¶ 22-26 [Doc. No. 16-4]. The dealership offered Musso the use of a loaner to replace his trade-in vehicle while his Ford Edge was being prepared for final delivery. Id. This circumstance put pressure on Musso, as he was forced to choose between signing the documents or being without a vehicle until the Ford Edge was ready. Id. Musso signed the arbitration agreement in question, among other documents, at that time. Pltfs' Opp. at 5-6 [Doc. No. 16].

The arbitration agreements signed by plaintiffs are identical. In relevant portion they read:

> "DISPUTES COVERED: This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to: ...
> - Any negotiation between you and us;
> - Any Claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreements;
> - Any claim or dispute based on a federal or state statute including but not limited to the N.J. Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. and the Federal Truth in Lending Act[.]"

See Foulke Mot. at 4 [Doc. No. 3-1]; Wells Fargo Mot. at 3. [Doc. No. 14-2].

Plaintiffs' complaint contains six counts alleging defendants violated several state and federal statues including the New Jersey Consumer Fraud Act and the Federal Truth in Lending Act. Compl. at ¶¶ 126, 144, 147, 150 [Doc. No. 1]. Plaintiffs' complaint contains allegations of fraud, including allegations that plaintiffs' signings of their arbitration agreements were based on defendants' "material misrepresentations and concealments[.]" Id. at ¶¶ 134-137 [Doc. No. 1]. In other words, plaintiffs allege fraud in the inducement of their arbitration agreements.

Defendants argue that plaintiffs' claims fall within the parameters of their arbitration agreements and request that the case be stayed pending arbitration. See Foulke Mot. at 6 [Doc. No.

5

3-1]; Wells Fargo Mot. at 6 [Doc. No. 14-2]. Defendants' argument is predicated on the arbitration agreements signed by Musso and Corchado, which defendants contend show plaintiffs clearly and unmistakably agreed to arbitrate the arbitrability of this dispute. <u>Id.</u> at 10. In support of their position defendants note "[t]he parties expressly agreed that the validity of the arbitration agreement, including claims that the Plaintiffs were fraudulently induced into signing the arbitration agreements is to be decided by the Arbitrator and not the Court." Joint Reply at 4 [Doc. No. 18]. Defendants support this argument by highlighting the language in their arbitration agreements which state that the arbitrator decides disputes "based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreements." <u>Id.</u>

Plaintiffs oppose defendants' motion, asserting that arbitration agreements, as creatures of contract law, can only be enforced if they are predicated on the mutual assent of the parties. Pltfs' Opp. at 10 [Doc. No. 16]. Plaintiffs deny they assented to arbitration. Accordingly, plaintiffs argue, their fraudulently obtained arbitration agreements dictate that defendants' request to arbitrate be denied. <u>Id.</u>

**DISCUSSION**

**1. Standard of Review**

The Third Circuit has dictated a two-tier standard of review a court must apply in deciding a motion to compel arbitration. See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013). If it is apparent on the face of the complaint and the documents relied upon in the complaint that the claims contained within the complaint are subject to arbitration, the case is considered under a motion to dismiss standard pursuant to Fed. R. Civ. P. 12(b)(6). Id. at 774-76. The motion to dismiss standard is, however, inappropriate where "either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." Id. at 774 (quotation and citations omitted). In such circumstances, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing." Id. at 776. After this limited discovery is completed, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." Id.

## 2. General Principles of Arbitration

Arbitration provisions are creatures of contract law. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010). The validity of an arbitration provision is governed by black-letter contract principles such as offer, acceptance, consideration, and mutual assent. See, e.g., Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 348 n.8 (3d Cir. 1997) ("[T]he warranty constituted an offer to arbitrate that was accepted by the written request for arbitration[.]"); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 53 (3d Cir. 1980) ("Par-knit's duty to arbitrate, if any, rests upon a determination as to whether or not the documents in issue were intended by Par-knit to be contracts."). Due to their contractual nature, arbitration provisions are only enforceable if "predicated upon the parties' consent." Guidotti, 716 F.3d at 771.

Arbitration is also governed by statute. In this case the parties' arbitration agreements are subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., and the New Jersey Uniform Arbitration Act of 2003 ("NJUAA"), N.J.S.A. 2A:23B–1, et seq. Washington v. CentraState Healthcare Sys., Inc., C.A. No. 10-6279 (AET/LHG), 2011 WL 1402765, at *4 (D.N.J. Apr. 13, 2011). The FAA embodies a "liberal federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24

8

(1983). It was passed by Congress in 1925 to combat "widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). With the FAA in place, courts must "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Id. (citations omitted). Essentially, the FAA prohibits courts from subjecting arbitration provisions to more rigorous requirements than other contracts or invalidating them based on defenses unique to arbitration. Id.

Section 2 of the FAA provides: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The "saving clause" at the end of Section 2 indicates that the purpose of Congress "was to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967).

Under Section 3 of the FAA, a party may apply to a federal court for a stay of the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration."

9 U.S.C. § 3. Section 4 of the FAA directs courts to compel parties to arbitration so long as "the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. "The NJUAA has a substantive provision nearly identical to the FAA's § 2, see N.J.S.A. 2A:23B-6(a), and a mechanism for staying court proceedings and compelling arbitration similar to the FAA's §§ 3 and 4, see N.J.S.A. 2A:23B-7." Washington, 2011 WL 1402765, at *4.

### 3. The Determination of Arbitrability/Gateway Issue

Before the Court decides whether the parties' arbitration agreements cover the dispute at issue, the Court must address who decides the gateway question of arbitrability. Defendants argue the arbitrator should make the decision. Plaintiffs argue this is a decision for the Court. The Court sides with plaintiffs. As noted by the Supreme Court, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." Prima Paint, 388 U.S. at 403-04.

In Rent-A-Ctr., the Supreme Court affirmed that in certain circumstances, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular

controversy." 561 U.S. at 68. The Court's reasoning extends from the contractual nature of arbitration agreements. Id. In the Supreme Court's view, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." Id. at 70. Where parties "clearly and unmistakably" agree to submit gateway issues to an arbitrator, the arbitrator must determine whether arbitration is appropriate. Id. at 69 n.1 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). However, in making its ruling the Supreme Court affirmed that arbitration agreements remain subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability." Rent-A-Ctr., 561 U.S. at 68. Here, plaintiffs raise a generally applicable contract defense as to their stand-alone arbitration agreements, i.e., fraud in the inducement. Pltfs' Opp. at 11 [Doc. No. 16]. Thus, the gateway issue must be decided by the Court.

Generally, to determine whether the Court or an arbitrator should decide the gateway issue the Court must ascertain whether the parties agreed to arbitrate. Defendants rely on the language in the arbitration agreements providing that the arbitrator decides claims of fraud in the inducement. However, under New Jersey law, "[a]rbitration's favored status does not mean that

every arbitration clause, however phrased, will be enforceable." Atalese v. U.S. Legal Servs. Grp., L.P., 99 A.3d 306, 312 (N.J. 2014), cert. denied, 135 S. Ct. 2804 (2015). "An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined by customary principles of contract law." Id. at 312-13. Customary principles of contract law require a "meeting of the minds" between the parties. Id. at 313. This meeting of the minds, also called "[m]utual assent[,] requires that the parties have an understanding of the terms to which they have agreed." Id. Where contract formation requires one or more parties to waive their rights, such waiver is only effective if the waiving party has "full knowledge of his legal rights and intent to surrender those rights." Id. Stated another way, a party cannot be required to submit a dispute to arbitration which he has not agreed to submit. Angrisani v. Financial Technology Ventures, L.P., 952 A.2d 1140, 1148 (N.J. Super. Ct. App. Div. 2008).

In Atalese, the plaintiff contracted for debt-adjustment services with the defendant. 99 A.3d at 309. The arbitration provision indicated that claims against the defendant would be subject to arbitration, but failed to specify that the plaintiff was waiving her right to seek relief in court. Id. The defendants argued that the term arbitration has a commonly accepted meaning

12

that put the plaintiff on notice she was waiving her right to seek relief in court. Id. at 311. The New Jersey Supreme Court rejected the defendant's argument and found the agreement to arbitrate unenforceable. Id. at 316.

The Atalese decision was based on the State's substantive body of contract law, under which a party may only agree to contractual provisions waiving the party's rights by "clearly and unmistakably" agreeing to its terms. Id. at 314. Under New Jersey law waiving a right requires a "clear, unequivocal, and decisive act of the party." Id. Arbitration provisions necessarily contain at least one right which must be waived, "the right to pursue a case in a judicial forum." Id. Consequently, "courts take particular care in assuring the knowing assent of both parties to arbitrate." Id. This "particular care" is not the product of animus against arbitration provisions. Instead, New Jersey's waiver-of-rights requirements are enforced as to all contracts containing a waiver of rights. Id. at 314.

Here, plaintiffs maintain defendants' alleged fraud prevented them from assenting to their arbitration agreements. Corchado and Musso support their contentions with declarations from themselves

and at least one third-party witness.[3] Plaintiffs' allegations qualify as "more than a naked assertion" that plaintiffs "did not intend to be bound by the arbitration agreement[s]." See <u>Guidotti</u>, 716 F.3d at 774. Defendants argue that if the Court accepts plaintiffs' position a party can avoid or delay arbitration by simply alleging fraud. The Court disagrees. The <u>Guidotti</u> decision addressed this exact argument. 716 F.3d at 778. The decision concluded that sworn statements which factually support a non-moving party's allegations questioning the formation of an agreement to arbitrate are generally sufficient to raise fact questions warranting further discovery. <u>Id.</u> This is precisely what has occurred here.

Defendant argues that an arbitrator should decide the gateway arbitrability issue even when a colorable fraud in the inducement claim exists as to a stand-alone arbitration agreement. This argument disregards the holding in <u>Atalese</u> as well as <u>Prima Paint</u>. As noted, plaintiffs have made a colorable claim of fraud.[4] In view of plaintiffs' evidence alleging fraud in the inducement of their

---

[3] <u>See</u> Declaration of Brandy Corchado [Doc. No. 16-3]; Declaration of Morgan Risko [Doc. No. 16-5]; Declaration of Debbie Bertolini [Doc. No. 16-6].

[4] To be sure, the Court is not making any findings of fact; the Court is simply ruling that plaintiffs' fraud claims are supported by competent evidence (i.e. declarations) and are more than naked assertions.

stand-alone arbitration agreements, and therefore no assent to arbitration, it would be anomalous to hold an arbitrator should decide the gateway arbitration issue. If a valid arbitration agreement does not exist, then an arbitrator is "out of the picture." The Court will not give effect to defendants' contract provision regarding fraud in the inducement that is inconsistent with Atalese and Prima Paint.

As noted, the Court rejects defendants' argument that an arbitrator should decide the gateway question of arbitrability. Considering Atalese, Guidotti and Prima Paint in concert, the Court's holding is well supported. Pursuant to these authorities, there can be no agreement to arbitrate absent the mutual assent of the parties, including a clear and unmistakable waiver of the right to litigate. Plaintiffs' allegations directly implicate mutual assent and the knowing and voluntary waiver of the right to sue. In other words, plaintiffs' allegations are targeted at the moment of formation of the parties' arbitration agreements. Under Section 4 of the FAA the Court is instructed to compel arbitration only after the Court is satisfied an agreement to arbitrate exists. On the present record, the Court cannot hold as a matter of law that valid arbitration agreements were entered into because there is a factual dispute as to whether there was mutual assent. Given the

15

present state of the record, a "restricted inquiry into factual issues" is necessary in order for the Court to "properly evaluate whether there was a meeting of the minds on the agreement to arbitrate." Guidotti, 716 F.3d at 775.

Substantial federal and state precedent supports plaintiffs' position. As noted, in Prima Paint the Supreme Court specifically stated that where a party alleges fraud in the inducement of an arbitration agreement a federal court should hear the dispute, not an arbitrator. Prima Paint, 388 U.S. at 402. The Third Circuit also favors judicial determination on questions of arbitrability. See Guidotti, 716 F.3d at 775; Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 228 (3d Cir. 2012) ("[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination."). In addition, plaintiffs' arguments are consistent with the approach of the New Jersey Appellate Division after the issuance of Atalese. See Dispenziere v. Kushner Companies, 101 A.3d 1126, 1132 (App. Div. 2014) (holding lack of explicit waiver of right to litigate prevented mutual assent of the parties); Epstein v. Wilentz, Goldman & Spitzer, P.A., No. A-1157-14T1, 2015 WL 9876918, at *3 (N.J. Super. Ct. App. Div. Jan. 22, 2016) ("The parties must have full knowledge of the legal

rights they intend to surrender."); see also Min Fu v. Hunan of Morris Food Inc., 2103 WL 5970167, at *5 (App. Div. Nov. 6, 2013)("To establish lack of assent to a contract, courts look to evidence of fraud or misrepresentation by the other party[.]").

Defendants' requested result runs contrary to the language of the FAA. The saving clause of Section 2 of the FAA gives federal courts an opportunity to evaluate arbitration agreements and invalidate them based on generally applicable contract defenses. Section 4 directs federal courts to compel arbitration after evaluating "the making of the agreement for arbitration." 9 U.S.C. § 4. The combination of these two sections evidences that Congress intended to give federal courts a window of jurisdiction over the "making" or formation of arbitration agreements during which they may evaluate an arbitration agreement under generally available contract defenses. To construe the FAA another way would read Section 2's saving clause out of the statute. The Court will not do so.

As noted herein, the Court is not able at this time to issue a final decision as to whether plaintiffs' claims are subject to arbitration. This is so because of the parties' fact disputes. The fact disputes preventing the immediate resolution of the gateway arbitrability issue are directed to whether the parties mutually

17

assented to their arbitration agreements. Issues to explore include, but are not necessarily limited to, the representations made by Foulke's employees to Corchado and Musso, and whether Foulke's employees covered portions of the arbitration agreements when plaintiffs signed them. After limited discovery is taken, the Court will consider a renewed motion to compel arbitration. Guidotti, 716 F.3d at 775; Thomas Global Grp., LLC v. Watkins, C.A. No. 13-04864 SRC, 2014 WL 1371719, at *7 (D.N.J. Apr. 8, 2014) ("Limited discovery into the existence of an agreement to arbitrate will presumably shed light on such interpretative evidence, should any exist, which is one reason why Guidotti requires discovery into the question in all but the clearest circumstances."). The renewed motion will be considered under a summary judgment standard. Guidotti, 716 F.3d at 776. If fact questions still exist, they must be resolved by a factfinder. Id. at 780.

**CONCLUSION AND ORDER**

Accordingly, and for the foregoing reasons,

IT IS hereby ORDERED this 6th day of May, 2016, that the "Motion[s] to Compel Arbitration and Stay Proceedings" [Doc. Nos. 3, 14] filed by defendants Foulke and Wells Fargo are DENIED WITHOUT PREJUDICE; and it is further

18

ORDERED that defendants are granted leave to file a renewed motion to compel arbitration after limited discovery regarding the arbitrability issue; and it is further

ORDERED that in a separate Order the Court will schedule a conference to address a schedule moving forward. Prior to the call the parties shall meet and confer to identify the limited discovery they request to take directed to whether the parties' mutually assented to their arbitration agreements.

<u>s/ Joel Schneider</u>
JOEL SCHNEIDER
United States Magistrate Judge